James H. SULLIVAN, Appellant,

v.

The PULITZER BROADCASTING
COMPANY, Respondent.

No. 67616.

Supreme Court of Missouri,
En Banc.

May 13, 1986.

Edward P. McSweeney, Michael J. Coleman, St. Louis, for appellant.

Robert B. Hoemeke, Richard A. Wunderlich, Joseph E. Martineau, Helmut Starr, St. Louis, for respondent.

WELLIVER, Judge.

This case involves an appeal from an order of the trial court dismissing a suit against respondent, the Pulitzer Broadcasting Company. Appellant, James H. Sulli-

van, claims that respondent aired five news broadcasts, each of which purportedly related false information of and concerning appellant. Appellant alleges that these newscasts damaged his reputation and standing in the community; and he further alleges that he has and will suffer emotional trauma, medical expenses, and loss of employment. The trial court sustained a motion to dismiss. The crucial issue on appeal is whether appellant can evade the two year statute of limitations for defamation actions by urging that we denominate his claim as one for "false light invasion of privacy" and also treat such a claim as one not governed by the statute of limitations for defamation actions. After a well-reasoned opinion by the Court of Appeals,[1] Eastern District, suggesting that the judgment be affirmed, that Court transferred the case to this Court due to the question involved. We treat this case as if on original appeal. Mo. Const. art. V, § 10. We affirm.

Appellant filed suit on November 7, 1983, alleging that on five occasions, beginning on November 22, 1978 and ending on November 29, 1978, respondent broadcast over its television station a story concerning appellant, which, taken as a whole,

> intentionally and maliciously conveyed the false impression that plaintiff, then Administrator of City Hospital # 1 and an employee of the City of St. Louis was unlawfully and improperly building a home with materials stolen from the City of St. Louis, ... and that plaintiff had improperly arranged for an architect employed by the City of St. Louis to prepare the official plans for his home, thus and thereby portraying plaintiff in a false light publicly.

Each of the five separate counts alleges an injury based upon a different broadcast of the story.

Other broadcasts during this period concerning the same story were the subject of a previous lawsuit between these parties,

---

**1.** We have drawn freely from the court of appeals opinion without the benefit of quotation marks.

resulting in a $5,000 verdict for appellant on a trespass count and against appellant on counts alleging an "intrusion upon seclusion invasion of privacy" and a "false light invasion of privacy." *Sullivan v. KSD/KSD–TV*, 661 S.W.2d 49, (Mo.App. 1983). During oral argument, appellant explained that he knowingly withheld certain counts from this first suit on the assumption that he could bring an action after the running of the two year statute of limitations for libel and slander by characterizing the action as one for false light invasion of privacy.

Appellant's petition further avers that as a direct result of these broadcasts he, has been greatly injured in his reputation and standing in the community, suffered shame, embarrassment, humiliation, mental anguish, emotional distress and strain and hypertension, been exposed to public contempt and ridicule and has been forced to seek medical treatment, and will be forced to seek medical treatment in the future; further, plaintiff has lost his employment with the City of St. Louis, and the income from said employment.

Respondent filed its answer raising certain affirmative defenses: (1) res judicata and collateral estoppel based upon the prior lawsuit between the parties; and (2) a qualified privilege based in part on the public interest of the information and on appellant's status as a public figure.[2] In its motion to dismiss, respondent asserts that the action is (1) barred by the statute of limitations, § 516.140, RSMo 1978; (2) the petition alleges a tort not recognized in Missouri for inaccurate reporting; (3) appellant failed to plead special damages es-

sential to a claim for "false light" invasion of privacy; and (4) appellant failed to plead in *haec verba*. The trial court sustained the motion to dismiss without specifying the grounds. This Court will sustain the judgment if any of the asserted grounds for dismissal are proper.

The initial question we must decide is whether appellant pleads a cause of action upon which relief may be granted and, if so, whether the action is barred by an applicable statute of limitations. Respondent contends that appellant's petition states a claim for defamation, and because the action was instituted just short of five years after the alleged tortious action the suit is barred by the two year statute of limitations for libel and slander. § 516.-140, RSMo 1978.[3] Appellant, however, argues that this Court should recognize and denominate a separate tort of "false light invasion of privacy" and that the petition should be read as pleading such a cause of action. Appellant further contends that the two year statute of limitations should not control and argues in favor of the five year statute of limitations. § 516.120, RSMo 1978. Our precise inquiry, therefore, focuses on whether, under the *facts of this case,* appellant can avoid the statute of limitations bar by treating the action as a "false light invasion of privacy" rather than as a defamation.

A tort for "invasion of privacy" originated in an 1890 law review article written by Samuel D. Warren and his law partner, Louis D. Brandeis. Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193 (1890). *See generally* G. White, Tort Law in America 173–76 (1980); Felcher & Rubin, Privacy, Publicity, and the Portrayal of

**2.** Prior cases suggest that the general right to privacy is subject to a privilege of publishing matters of legitimate public concern. *See Hagler v. Democrat-News, Inc.,* 699 S.W.2d 96 (Mo. App.1985).

**3.** **516.140. What actions within two years.** —Within two years: An action for libel, slander, assault, battery, false imprisonment or criminal conversation. An action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation or liq-

uidated damages by reason of the nonpayment of minimum wages or overtime compensation, and for the recovery of any amount under and by virtue of the provisions of the Fair Labor Standards Act of 1938 and amendments thereto, said act being an act of Congress, shall be brought within two years after the cause accrued.
(RSMo 1939 § 1016, A.L.1945 p. 644, A.L.1976 S.B. 470). Prior revisions: 1929 § 864; 1919 § 1319; 1909 § 1891.

Real People by the Media, 88 Yale L.J. 1577 (1979). *See also* Note, Tort Recovering for Invasion of Privacy, 59 Neb.L.Rev. 808 (1980). They wrote the article in response to the "yellow journalism" of the era, particularly after newspapers published stories about the private affairs of the "social elite," of which Warren was a member. The authors suggested that people have a "right to be let alone" in their private affairs. In the mid 1930s, the American Law Institute acknowledged the need for such a cause of action:

> A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other.

4 Restatement of Torts § 867 (1939). Some of the examples offered in the comments to § 867 illustrate the initial scope of this action:

> 2. A, as an advertisement for a baby food, publishes a picture of B, a mother nursing her child, without B's consent. B has a cause of action against A.
> 3. From a skylight in an operating room in a hospital, A takes moving pictures of an abdominal operation performed upon B, a woman. A shows these pictures publicly. B has a cause of action against A.

4 Restatement of Torts § 867, Illustrations, at 461. Then, in 1960, Prosser suggested that the single tort for "invasion of privacy" was actually four distinct torts:

> What has emerged from the decisions is no simple matter. It is not one tort, but a complex of four. The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right

of the plaintiff, in the phrase coined by Judge Cooley, "to be let alone." Without any attempt to exact definition, these four torts may be described as follows:

> 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
> 2. Public disclosure of embarrassing private facts about the plaintiff.
> 3. Publicity which places the plaintiff in a false light in the public eye.
> 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

> It should be obvious at once that these four types of invasion may be subject, in some respects at least, to different rules; and that when what is said as to any one of them is carried over to another, it may not be at all applicable, and confusion may follow.

Prosser, Privacy, 48 Calif.L.Rev. 382, 389 (1960). In their second restatement, the A.L.I. adopted Prosser's classification. Restatement (Second) of Torts 652A.[4] *It might be noted, however, that a number of commentators question Prosser's attempt to organize the law into four distinct "factual" categories. See e.g.,* L. Eldredge, The Law of Defamation 301 n.1 (1978); Blaustein, Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser, 39 N.Y.U.L. Rev. 962 (1964). *See also* Comment, the Absence of False Light From the Wisconsin Privacy Statute, 66 Marq.L.Rev. 99, 105 n.46 (1982).

Since the early twentieth century, Missouri has recognized a cause of action for an "invasion of privacy." *Munden v. Harris,* 153 Mo.App. 652, 134 S.W. 1076 (1911). In *Barber v. Time, Inc.,* 348 Mo. 1199, 159 S.W.2d 291 (1942), this Court acknowledged the general "right of privacy" not to have certain private affairs made public—the tort urged by Warren and Brandeis and sub-

---

**4.** 652A. General Principle
(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
(2) The right of privacy is invaded by
  (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or
  (b) appropriation of the other's name or likeness, as stated in § 652C; or
  (c) unreasonable publicity given to the other's private life, as stated in § 652D; or
  (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

sequently adopted by the A.L.I. There, the Court quoted approvingly from both the Harvard Law Review article and § 867 of 4 Restatement of Torts. The Court, however, cautioned that the "right to be let alone" was subject to a common law privilege permitting the publication of matters of public interest. Elsewhere in the opinion, the Court added that the right to privacy involved true statements, while "[r]ecovery for untrue statements should be on the libel count." *Barber v. Time, Inc., supra,* 159 S.W.2d at 296. *See also Langworthy v. Pulitzer Publishing Co.,* 368 S.W.2d 385 (Mo.1963). In addition to recognizing the particular invasion of privacy for the publication of private matters, other cases suggest that an invasion of privacy occurs when one unreasonably intrudes upon the seclusion of another or appropriates another's name or likeness for his or her own benefit—the latter action may be an economic or unfair trade tort (right of publicity). *See Sofka v. Thal,* 662 S.W.2d 502 (Mo. banc 1983) (intrusion upon seclusion); *Zimmerman v. Associates Discount Corp.,* 444 S.W.2d 396, 398 (Mo. banc 1969) (public disclosure of private facts); *Biederman's of Springfield, Inc. v. Wright,* 322 S.W.2d 892, 895–97 (Mo.1959) (public disclosure of private facts); *Corcoran v. Southwestern Bell Tel. Co.,* 572 S.W.2d 212, 214–25 (Mo. App.1978) (public disclosure of private facts and intrusion upon seclusion); *Williams v. KCMO Broadcasting Div.—Meredith Corp.,* 472 S.W.2d 1, 3–5 (Mo.App. 1971) (public disclosure of private facts); *Munden v. Harris, supra* (appropriation of right of publicity).

This Court, however, has not yet recognized a cause of action apart from defamation for a "false light" invasion of privacy, the remaining category in the Restatement classification. In *Sofka v. Thal,* 662 S.W.2d 502 (Mo. banc 1983), we acknowledged that an "invasion of privacy" is a general term used to describe four different torts, but the Court there was concerned only with an intrusion upon seclusion. Our courts of appeal similarly have acknowledged the Restatement classification. *Hagler v. Democrat-News, Inc.,* 699 S.W.2d 96 (Mo.App.1985); *Buller v. Pulitzer Publishing Co.,* 684 S.W.2d 473 (Mo.App.1984); *Corcoran v. Southwestern Bell Tel. Co.,* 572 S.W.2d 212 (Mo.App. 1978). In *Buller, supra,* the court suggested that an action would lie for "false light" but that the plaintiff failed to plead such an action. And, in *Hagler, supra,* "false light" was alleged but the court held that the suit could not lie when the matter was of legitimate public interest. In both cases, however, the theory of recovery sounds more like "public disclosure of private facts" than a "false light" invasion of privacy.

Consequently, appellant urges that this Court now adopt the "false light invasion of privacy" tort and, after doing so, apply the five year statute of limitations rather than the two year statute for libel and slander suits. Many questions now surround the "false light" theory, one of which is whether such an action is even necessary. Unlike the other three categories in the Restatement (Second) of Torts § 652A, where truth or falsity is *not* an issue, the "false light" theory under § 652E[5] resembles a defamation suit because each action requires the publication of false information. *See* R. Sack, Libel, Slander, and Related Problems 394 (1980); Prosser, *supra,* at 407.

Although there are obviously a number of *similarities* between the right to privacy and the law of defamation, *particularly when a "false light" invasion of privacy is involved,* there are also important differences which reflect the

---

5. **652E. Publicity Placing Person in False Light**

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

nature of the interests protected by each. As identified by Professor Thomas I. Emerson,

> Three major differences should be noted. In defamation law only statements that are false are actionable, truth is, almost universally, a defense. In privacy law, *other than in false light cases,* the facts published are true; indeed it is the very truth of the facts that creates the claimed invasion of privacy. Secondly, in defamation cases the interest sought to be protected is the objective one of reputation, either economic, political, or personal, in the outside world. In privacy cases the interest affected is the subjective one of injury to inner person. Thirdly, where the issue is truth or falsity, the marketplace of ideas furnishes a forum in which the battle can be fought. In privacy cases, resort to the marketplace simply accentuates the injury.

Emerson, The Right of Privacy and Freedom of the Press, 14 Harv. C.R.–C.L.L. Rev. 329, 333 (1979).

*Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70, 83 (W.Va.1984) (emphasis added). The only apparent difference between "false light" and defamation is that the latter protects one's *interest* in his or her reputation, while the former protects one's *interest* in the "right to be let alone." W. Prosser & P. Keeton, *supra,* at 864. Prosser, therefore, writes that under a "false light" theory the matter need not be defamatory—that is, harmful to one's reputation. This, however, may be a semantic distinction without a substantive difference; and, it may well be argued that if the *effect* of the difference is merely to alter the type of damages recoverable, then the common law of defamation should progress and allow such damages rather than having this Court adopt a tort with a different name. Yet, it is not altogether clear that there is a difference in the type of damages that can be recovered. In oral argument, appellant stated that the same damages could be recovered under each theory; and, in his petition, appellant requests damages for both his injury to his reputation and an injury to his "right to be let alone."

Another concern, expressed by Prosser himself, is that too broad an application of a "false light" theory might swallow up the entire law of defamation:

> It is here, however, that one disposed to alarm might express the greatest concern over where privacy may be going. The question may well be raised, and apparently still is unanswered, whether this branch of the tort is not capable of swallowing up and engulfing the whole law of public defamation; and whether there is any false libel printed, for example, in a newspaper, which cannot be redressed upon the alternative ground. If that turns out to be the case, it may well be asked, what of the numerous restrictions and limitations which have hedged defamation about for many years, in the interest of freedom of the press and the discouragement of trivial and extortionate claims? Are they of so little consequence that they may be circumvented in so casual and cavalier a fashion?

Prosser, *supra,* at 401. *See also* Wade, Defamation and the Right to Privacy, 15 Vand.L.Rev. 1093 (1962). In their briefs to both this Court and the court of appeals, the research of both parties demonstrates that the jurisdictions have split over whether or not such an independent cause of action is necessary. Only recently, the North Carolina Supreme Court declined to recognize the tort, cautioning:

> Two basic concerns argue against the recognition of a separate tort of false light invasion of privacy. First, any right to recovery for a false light invasion of privacy will often either duplicate an existing right of recovery for libel or slander or involve a good deal of overlapping with such rights. Second, the recognition of a separate tort of false light invasion of privacy, to the extent it would allow recovery beyond that permitted in actions for libel or slander, would tend to add to the tension already existing between the First Amendment and the law of torts in cases of this nature.

*Renwick v. News & Observer Publishing Co.*, 312 S.E.2d 405, 412 (N.C.1984). *See also Falwell v. Penthouse Intern., Ltd.*, 521 F.Supp. 1204, 1205 (W.D.Va.1981); *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (N.Y.1982). *But cf. Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 448 A.2d 1317 (1982); *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W.Va.1984).

The comments to the Restatement further indicate the many constitutional questions that accompany adoption of a separate tort for "false light." Restatement (Second) of Torts § 652E, Comment d. *See e.g., Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 448 A.2d 1317 (1982). *See also Philadelphia Newspapers, Inc. v. Hepps*, —— U.S. ——, 106 S.Ct. 1558, —— L.Ed.2d —— (1986) (public or private plaintiff must establish falsely when suing a media defendant on a matter of public concern). The drafters also note that courts must decide whether the various common law restrictions and privileges that exist in defamation law, including a statute of limitations, would apply to a claim for "false light" invasion of privacy. Comment e. Although declining to endorse any approach, they indicate:

> When the false publicity is also defamatory so that either action can be maintained by the plaintiff, it is arguable that limitations of long-standing that have been found desirable for the action for defamation should not be successfully evaded by proceeding upon a different theory of later origin, in the development of which the attention of the courts has not been directed to the limitation.

Restatement (Second) of Torts § 652E, Comment e, at 399. In an effort to avoid such a problem and because courts normally apply the most analogous statute of limitations, a number of courts that have either recognized the tort or assumed the existence of the action for argument's sake apply the statute of limitations for defamation actions to a claim for "false light". *See e.g., Gashgai v. Leibowitz*, 703 F.2d 10 (1st Cir.1983); *Wiener v. Superior Court for the County of Los Angeles*, 58 Cal. App.3d 525, 130 Cal.Rptr. 61 (1976). This same conclusion was reached by a federal district court applying Missouri law. *White v. Fawcett Publications*, 324 F.Supp. 403 (W.D.Mo.1971). It can be argued that if the defamation statute of limitations is not applied, such a statute will become meaningless because parties will invariably claim a "false light" invasion of privacy instead of a defamation.

It may be possible that in the future Missouri courts will be presented with an appropriate case justifying our recognition of the tort of "false light invasion of privacy." The classic case is when one publicly attributes to the plaintiff some opinion or utterance, whether harmful or not, that is false, such as claiming that the plaintiff wrote a poem, article or book which plaintiff did not in fact write. W. Prosser & P. Keeton, *supra*, at 863. *E.g., Kerby v. Hal Roach Studios*, 53 Cal.App.2d 207, 127 P.2d 577 (1942). Another situation, although possibly actionable under defamation law,[6] is when one uses another's likeness in connection with a story that has no bearing on the plaintiff. In *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W.Va.1984), for example, the defendant published plaintiff's picture next to a story about the problems faced by women coal miners, although the plaintiff did not experience any of the problems related in the story. *See also Leverton v. Curtis Publishing Co.*, 192 F.2d 974 (3rd Cir.1951); *Peay v. Curtis Publishing Co.*, 78 F.Supp. 305 (D.C.Cir.1948).

Recognizing the many ancillary questions that will arise and the confusion that now engulfs this area of the law, we hesitate under the facts of this case to decide

---

**6.** Another area where the overlap occurs is in defamation by fiction. *See generally* Symposium, Defamation in Fiction, 51 Brooklyn L.Rev. 223 (1985); Comment, Defamation By Fiction,

42 Md.L.Rev. 387 (1983). *E.g., Pring v. Penthouse International, Ltd.*, 695 F.2d 438 (10th Cir.1982).

whether or not to denominate a separate tort for "false light invasion of privacy." This Court is not confronted with a situation where a party alleges that another has created a false impression in the public eye. Nor is this a case such as *Crump, supra,* where the plaintiff's likeness (picture) improperly created the impression that the plaintiff encountered the problems discussed in the story. The case at bar is nothing more than the classic defamation action where one party alleges that the other published a false accusation concerning a statement of fact—in this case, a charge of criminal conduct or wrongdoing. In his petition, appellant has merely substituted the word "false" for the phrase "false impression"; and, rather than alleging an injury to reputation, appellant alleges an injury to his reputation and an injury to his right to be let alone. We find these factors insufficient to justify treating this claim as anything other than a defamation action, and because the action was instituted well after the running of the statute of limitations for a defamation, the trial court properly dismissed the suit.

The judgment of the trial court is affirmed.

HIGGINS, C.J., and BILLINGS, DONNELLY and ROBERTSON, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

RENDLEN, J., concurs in result and concurs in separate concurring opinion of BLACKMAR, J.

BLACKMAR, Judge, concurring.

I agree that this case is not an appropriate vehicle for determining whether we should recognize a separate tort of "false light" invasion of privacy. The extensive legal analysis in the principal opinion accurately reflects the state of modern authority.

The plaintiff, at the time of the broadcasts complained of, was a public official— "administrator of City Hospital # 1." The publications to which he objects charge that he used materials paid for by the city in the construction of his private residence and that an architect employed by the city prepared the plans to this residence. These charges are proper matters of public concern, as to which the plaintiff has no right to privacy. If the allegations are true, then the broadcasts do not violate a legally protected right. If they are false, the plaintiff has a classic action of libel.

The right of privacy inures to persons who are not proper subjects for public scrutiny. In *Munden v. Harris,* 153 Mo.App. 652, 134 S.W. 1076 (1911), a merchant appropriated a child's picture for advertising. In *Barber v. Time, Inc.,* 159 S.W.2d 291 (Mo.1942), the defendant exposed the unusual manifestations of the plaintiff's rare disease to a national audience. In one of the best known false light cases, *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), inaccurate details were published about a family which had been held hostage by escaped convicts. In *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), inaccurate statements were published about the poverty and life style of a family following the accidental death of the father. The dominant feature of each of these cases is that private people were inappropriately exposed to public view. This petition shows on its face that this plaintiff is not an appropriate privacy claimant.

The law of libel protects against malicious defamation. The action is carefully confined, because it impacts freedom of expression.[1] The two year statute of limitations is a relatively short one. The legislature apparently thought that libel claimants should be required to make their claims quickly. This purpose would be utterly frustrated if a litigant could extend

---

1. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Philadelphia Newspapers, Inc. v. Hepps,* —— U.S. ——, 106 S.Ct. 1558, —— L.Ed.2d —— (1986).

the statute simply by giving the action another name.

The judgment is properly affirmed.